UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
MEDITERRANEAN SHIPPING CO. (USA),

      Plaintiff,

   10 Civ. 5070 (THK)

  -against-

   **MEMORANDUM OPINION**
   **AND ORDER**

CARGO AGENTS, INC.,

      Defendant.
---------------------------------------X

**THEODORE H. KATZ, United States Magistrate Judge.**

  Plaintiff Mediterranean Shipping Co. (USA) ("Mediterranean") brought this admiralty action against Defendant Cargo Agents, Inc. ("Cargo Agents") to recover demurrage. Plaintiff now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] For the reasons set forth in this decision, the motion is granted.

## BACKGROUND

  Plaintiff Mediterranean is a New York corporation and common carrier, which acts as the agent of Mediterranean Shipping Company S.A., a Swiss entity. (Complaint ¶ 3.) Cargo Agents is a New York corporation. Mediterranean's primary business is the shipping of large containers by sea to ports across the world. Cargo Agents is "an ocean transport intermediary" based in New York. (See

---

[1] The parties consented to proceed before this Court for all purposes, pursuant to 28 U.S.C. 636(c). Federal jurisdiction is found in admiralty, under 28 U.S.C. 1333.

Affidavit of Hattie Brown, filed on October 31, 2011 ("Hattie Brown Aff.") ¶ 8.) The dispute between Mediterranean and Cargo Agents is about a shipping container sent from Cherry Hill, Massachusetts, bound for Vitoria, Brazil. It is uncontested that Cargo Agents delivered a forty-foot shipping container, which they stated contained personal items and household goods, to be delivered to Mediterranean, in Massachusetts. Mediterranean transported this container over land to New York, where it was loaded onto a ship. It arrived in Vitoria, Brazil, in March 2009, and Mediterranean notified Cargo Agents that the container had reached its intended port.

No one ever came to claim the contents of the container. Soon thereafter, Mediterranean sent notice to Cargo Agents that Cargo Agents had exceeded their "free-time," and would be liable for demurrage and other charges.[2] In May 2010, more than a year after the cargo arrived in Vitoria, the Brazilian government allowed

---

[2] Typically, a shipper is entitled to a certain number of days, known in the industry as "free-time," to use a shipping container. Once the shipper has exceeded this allotment, it may owe a contractual fee to the shipping company, called "demurrage." (Declaration of Jorge Boose, dated October 7, 2011 ("Jorge Boose Decl.") ¶ 6); see, e.g., Evergreen Marine Corp. v. Welgrow Int'l Inc., 954 F. Supp. 101, 102 (S.D.N.Y. 1997) ("Detention charges (or 'demurrage') are charges for delays in returning cargo containers to the carrier within a specified time after the goods are tendered to the consignee designated to receive the shipped goods in another port.").

2

Mediterranean to remove the cargo and take its shipping container back. Mediterranean brought this suit, claiming it was entitled to damages of $31,294.58, plus interest, as well as attorney's fees and costs.[3] Cargo Agents's Answer denied virtually all of the allegations in the Complaint, and asserted eight affirmative defenses, including the absence of damages, the culpability of Plaintiff, the culpability of "other third parties," and that Defendant was acting as an agent for a disclosed principal. (See Def.'s Ans. at 1-2.) After the conclusion of pretrial discovery, Mediterranean filed the instant motion.

## DISCUSSION

### I. The Summary Judgment Standard

#### A. Federal Rule 56

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986); Shannon v. N.Y. City

---

[3] Plaintiff has asserted different amounts of damages at different points in the litigation. The figure here is from Jorge Boose's Declaration in Support of the Motion for Summary Judgment. (See Jorge Boose Decl. ¶ 17.)

Transit Auth., 332 F.3d 95, 98 (2d Cir. 2003). The burden of demonstrating the absence of any genuine dispute as to material facts rests upon the party seeking summary judgment. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). Once a properly supported motion for summary judgment has been submitted, the burden shifts to the non-moving party to make a sufficient showing to establish the essential elements of the claims on which it bears the burden of proof at trial. See Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003); Peck v. Pub. Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003) (citing Celotex, 477 U.S. at 323, 106 S. Ct. at 2553).

In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, courts are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006). However, in opposing a motion for summary judgment, the non-moving party must put forth "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A summary judgment opponent "must do more than simply show that there is some metaphysical doubt as to the material

4

facts." Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1989). The non-moving party may not rely on its pleadings, mere allegations, simple denials, conclusory statements, or conjecture to create a genuine issue for trial. See Anderson, 477 U.S. at 256-57, 106 S. Ct. at 2514; Guilbert v. Gardner, 480 F. 3d 140, 145 (2d Cir. 2007); Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (non-moving party "must offer some hard evidence showing that its version of the events is not wholly fanciful").

At the summary judgment stage, "it is undoubtedly the duty of district courts not to weigh the credibility of the parties." Jeffreys, 426 F.3d at 554; accord McClellan, 439 F.3d at 144 (noting that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury not for the court on a motion for summary judgment").

B. **Local Rule 56.1**

Under the Southern District of New York's Local Civil Rule 56.1, a party moving for summary judgment must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civil Rule of the Southern District of New York 56.1(a) ("Local Rule 56.1"). Significantly,

"[e]ach numbered paragraph in the statement of material facts set forth in the statement . . . will be deemed to be admitted for purposes of the motion unless the nonmoving party specifically controverts each item by a correspondingly numbered paragraph in the statement . . . ." Local Rule 56.1(c). Both parties' statements must be "followed by citation to evidence which would be admissible" under Federal Rule of Civil Procedure 56(e). Local Rule 56.1(d).

Defendant Cargo Agent has failed to comply with Local Rule 56.1, because it did not submit a numbered statement corresponding to Plaintiff's statement of uncontested facts. A non-moving party's failure to adhere to Local Rule 56.1(b) can prove fatal because "[it] permits the court to conclude that the facts asserted in the statement are uncontested and admissible. In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." T.Y. v. New York City Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009)(internal citations omitted); see Gadsden v. Jones Lang LaSalle Americas, Inc., 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002) (collecting cases)("[c]ourts in this circuit have not hesitated to deem admitted the facts in a movant's Local Rule 56.1 Statement that have not been controverted by a Local Rule 56.1 statement from the non-moving party."); see also Millus v.

6

D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000) (summary judgment "appropriate" in light of non-moving party's failure to comply with Local Rule 56.1(b)).

Nevertheless, Local Rule 56.1 "does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported by the record." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

### III. Uncontested Facts[4]

Based on the submissions of the parties, the Court finds that the following facts, which are relevant to all of Plaintiff's claims, are not subject to any serious disagreement. There is no question that the shipping container was delivered to Mediterranean by Cargo Agents, in Massachusetts, in February 2009. (See Jorge Boose Decl., Ex. B.) That container was brought to the Port of New York, where it was loaded onto the m/v MSC Tanzania, which arrived in Vitoria, Brazil in March, 2009. The container was unloaded to

---

[4] Many of these facts are drawn from Plaintiff's Local Rule 56.1 Statement, because Defendant has not disputed these facts with any reference to admissible evidence. See Giannullo, 322 F.3d at 140; accord Orient Overseas Container Line Ltd. v. Crystal Cove Seafood Corp., No. 10 Civ. 3166(PGG), 2011 WL 4444527 at *1 n.1 (S.D.N.Y. Sept. 26, 2011).

the marine terminal in Vitoria on March 20, 2009,[5] and Mediterranean sent notice to the Consignee.[6]  (See Jorge Boose Decl. ¶ 16.)  Once the free-time period of seven days had expired, notice was sent to Cargo Agents.  (Id.)  No one arrived to pick up the contents of the container, and it remained in the marine terminal until May 5, 2010.  While the container was on the Vitoria docks, Mediterranean attempted to contact Cargo Agents repeatedly.  (Id., Ex. C.)  On May 5, 2010, Mediterranean was granted permission by the Brazilian Customs Authority to unpack and dispose of the contents of the container, and to retrieve its container.

It is uncontested that Mediterranean and Cargo Agents contracted to send the shipping container to Brazil, and that Cargo Agents was the shipper listed on the Bill of Lading.  Mediterranean has further furnished a copy of that Bill of Lading, as well as a

---

[5] One of the exhibits filed with the Court suggests that the container was discharged from the Tanzania on March 2, 2009, (See Jorge Boose Decl., Ex. C), while the Complaint ¶ 11, the Rule 56.1 Statement ¶ 9, and the Memorandum of Law in Support of Summary Judgment, at 7, all state that it was discharged on March 20, 2009.  The disparity in dates in Plaintiff's filings do not affect the issue of liability, but do affect the measure of damages.  The Court assumes that there was an error in the exhibit, and that the container was discharged on March 20, 2009.

[6] The Consignee is the client whom Cargo Agents was acting on behalf of to ship the container.  In this case, the Consignee was also the "Notify."  (See Jorge Boose Decl. ¶ 16.)  She is listed on the Bill of Lading as "Alexandra Hernandez."  (Id., Ex. C.)

8

copy of a communication between the parties confirming that Mediterranean sent Cargo Agents a copy of the Bill of Lading.

The Bill of Lading provides a definition of "freight" as "includ[ing] the freight and all charges, costs and expenses whatsoever payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading, including storage, per diem and demurrage." (Jorge Boose Decl., Ex. A, Bill of Lading ¶ 1)(emphasis added). The Bill of Lading also provides that the "merchant," in this case, Cargo Agents, was required to pay the full amount of freight under the contract. (Id. ¶¶ 2, 16.)

The contract makes it clear that Cargo Agents was responsible for retrieving the container once it had been delivered to the port. The contract states that:

> "[t]he Carrier allows a period of free time for the use of the containers and other equipment in accordance with the Tariff and as advised by the local [Mediterranean] agent at the Ports of Loading and Discharge. Free time commences from the day the Container and other equipment is collected by the Merchant or is discharged from the Vessel or is delivered to the Place of Delivery as the case may be. The Merchant is required and has the responsibility to return to a place nominated by the carrier the Container and other equipment before or at the end of the free time allowed at the Port of Discharge or the Place of Delivery. Demurrage, per diem and detention charges will be levied and payable by the Merchant thereafter in accordance with the Tariff."

(Id. ¶ 14.8.) It further states that: "[t]he Merchant shall take delivery of the goods within the time provided for in the Carrier's

9

applicable Tariff or as otherwise agreed." (Id. ¶ 20.2.) Mediterranean has provided the Court with a schedule of demurrage fees for Vitoria, Brazil, that is part of the tariff mandated by the Federal Maritime Commission. The tariff includes seven days of free time, and then lists its rate schedule for demurrage. The Bill of Lading explicitly incorporates the tariff, makes it available on request, and deems the shipper to be aware of the tariff. (Id. ¶ 3.)

### III. Plaintiff's Claim For Demurrage

There is no material issue of fact with regard to Plaintiff's claim for demurrage. There was a contract between the parties, which consisted of the Bill of Lading and the tariff which was expressly incorporated into the contract. See Missouri Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 144, 84 S.Ct. 1142, 1148 (1964) ("[t]he shipping contract consists of the bill of lading and the applicable tariffs lawfully published and filed, from which there may be no departure.") (internal citations omitted) ((Douglas, J., dissenting); accord Orient Overseas Container Line at *5.

"Where the language of a contract is clear, summary judgment is appropriate, and the fact that one party may have a different interpretation of the language does not make it any less plain." Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co., 970 F.2d 1138, 1147 (2d Cir. 1992). Here, the contract is clear

and unambiguous. Section 2 states that Cargo Agents (designated as "the Merchant") "warrants that . . . [it] is the owner of the goods or [agrees to the contract] with the authority of the owner." (Bill of Lading ¶ 2.) Section 3 states that the tariff is incorporated into the contract, and specifically directs the shipper to possible charges, including demurrage. (Id. ¶ 3.) Section 20 states that the merchant is responsible for ensuring the delivery of the goods. (Id. ¶ 20.)

Demurrage is a standard fee associated with shipping through common carriers; so much so that courts have found it to be an implied term in maritime contracts. See, e.g. Safmarine v. Columbia Container Lines (USA), Inc., No. 10 Civ. 1825(KAM), 2010 WL 7134001 at *3 (E.D.N.Y. 2010)(collecting cases). The term was explicitly used in the Bill of Lading, and the tariff including the schedule of fees was easily accessible to Defendant. Contrary to Defendant's characterization of Plaintiff's cause of action as an "attempt[] to create a windfall profit by relying on the fine print of its Bill of Lading . . . " (Hattie Brown Aff. ¶ 7), Plaintiff is simply asking for fees they are entitled to under long-standing industry practice and the terms of its agreement with Defendant. And Defendant was not an unsophisticated party: Cargo Agents is an Ocean Transportation Intermediary (Id. ¶ 8), an industry position well-enough defined to have its own section in the United States

Code. See 46 U.S.C. § 40901.

Defendant raises several purported disputes as to facts or its defenses. None of these presents a material dispute that can preclude summary judgment. First, Defendant claims that the Court must determine why it took over one year for the container to be returned. (Def.'s Mem. at 2.) But this is immaterial to the dispute. The terms of the Bill of Lading make it clear that Cargo Agents, not Mediterranean, was responsible for unpacking and returning the container. (Jorge Boose Decl., Ex. A ¶ 14.8); see also Pennsylvania R. Co. v. Moore-McCormack Lines, Inc., 370 F.2d 430, 431-32 (2d Cir. 1966)(upholding an award of demurrage even where defendant was prevented from retrieving its cargo by a stevedores' strike). Mediterranean has further provided uncontroverted evidence that it made several attempts to contact Cargo Agents. (Id., Ex. C). Defendant's vague insinuations that Mediterranean may have acted in bad faith to maximize demurrage costs is no more than conjecture, and conjecture does not create a dispute about a material issue of fact. See Matsushita Elec. Indus., 475 U.S. at 586, 106 S.Ct. at 1356.

Defendant also claims that a trial is necessary to determine whether or not Plaintiff received money for the liquidation of the cargo. But Defendant had an opportunity to conduct pretrial discovery and has not proferred any competent evidence indicating

that Plaintiff received value for the liquidation of the cargo. Even were a more intensive fact-finding process necessary, this would not preclude granting Mediterranean summary judgment on liability. See Fed. R. Civ. P. 56(g). And fact-finding is not necessary. The cargo was listed as "household goods and personal effects," and can be presumed to have little resale value. Cf. Schwab v. Reilly, --- U.S. ---, 130 S.Ct. 2652, 2675 n.11 (2010)(discussing the household goods exemption in the context of bankruptcy proceedings).

Accordingly, the Court finds that Plaintiff Mediterranean is entitled to summary judgment against Defendant Cargo Agents on its entitlement to demurrage.

## IV. Damages

### A. Demurrage

Plaintiff asks for an award of damages of $31,344.58, (Jorge Boose Decl. ¶ 17), which its claims as the amount owed in demurrage fees and other costs associated with retrieving the container.[7] This figure is based on the tariff rate.

Defendant argues that Plaintiff's theory of damages is flawed.

---

[7] The Rule 56.1 Statement states that the total fees are $31,294.58 (Rule 56.1 Statement ¶ 12), and the Complaint lists a different figure. The Declaration is the only submission that includes an accounting, and the Court has therefore relied primarily upon it.

(Hattie Brown Aff. ¶¶ 5-6.) Defendant claims that Plaintiff cannot demonstrate any actual loss due to the unavailability of the shipping container, and that, therefore, Plaintiff should not be entitled to damages. (Id. ¶ 7.)

Demurrage is an accepted form of liquidated damages in shipping, see Ocean Transp. Line v. AM. Philippine Fiber Ind., 743 F.2d 85, 90 (2d Cir. 1984) ; see also Toyomenka Pacific Petroleum, Inc. v. Hess Oil Virgin Islands Corp., 771 F. Supp. 63, 69 (S.D.N.Y. 1991)("Demurrage has sometimes been described as stipulated damages for detention." )(internal citations omitted), and in any event, Plaintiff is not allowed to deviate from its published tariff. See 46 U.S.C. § 41104. While Plaintiff must show actual loss, that inquiry is not used as the measure of damages where the contract provides for a reasonable demurrage fee. See Marin Tug & Barge, Inc. v. Westport Petroleum, Inc., 1 Fed. App'x 757, 759 (9th Cir. 2001)("[T]he mere stipulation of a liquidated sum for demurrage [does not] obviat[e] the need to show actual damages. At the same time, the requirement of proving actual damages does not vitiate the [stipulated] demurrage rate . . . unless such a rate is so excessive that it constitutes a penalty.")(alterations in original)(internal quotations and citations omitted). This rule has been established since the earliest days of federal admiralty jurisprudence. See, e.g. The

14

Apollon, 22 U.S. 362, 378 (1824)("In truth, demurrage is merely an allowance or compensation for the delay or detention of a vessel. It is often a matter of contract, but not necessarily so."). In other words, once a plaintiff has demonstrated that there has been loss, that is, the loss of the use of a container, the amount of loss is measured by the demurrage rate.

The Court, therefore, awards Plaintiff damages for demurrage in the amount of $30,191. This figure was reached based on the applicable tariff. The tariff provides for 7 days of free-time, which ran from March 20, 2009 until March 26, 2009. For the next 8 days, from March 27, 2009 until April 4, 2009, the demurrage rate was $49.00 per day, or $392.00 in total. For the remaining 387 days, the demurrage rate was $77.00 per day, or $29,799 in total. The final figure for demurrage is therefore $30,191.

Plaintiff has also asked for a variety of administrative costs and charges. (See Jorge Boose Decl. ¶ 17.) While these requests are relatively modest, the Court either cannot find these charges listed on the Bill of Lading, or the amounts for the charges do not correspond to the fees listed on the Bill. For example, Mediterranean asks for a "Terminal Handling Charge" of $211.56, but that is listed on the Bill of Lading as a $300.00 fee. The other fees, such as the "Bill of Lading Fee," the "MSC Administrative Fee," and the "ISPS Charge," do not correspond to any charges on

the Bill of Lading that Mediterranean produced to the Court, and no other proof of these charges has been submitted. Therefore, the Court cannot find sufficient proof of these fees, and declines to award them.

**B. Interest**

Plaintiff also asks for an award of interest on its damages. "Although it is an abuse of discretion to deny prejudgment interest in admiralty cases except under extraordinary circumstances, the district court has broader discretion to determine when interest commences and what rate of interest to apply." Independent Bulk Transport, Inc. v. Vessel Morania Abaco, 676 F.2d 23, 25 (2d Cir. 1982)(internal citation omitted). In admiralty, interest is meant to be solely compensatory. See New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.), 266 F.3d 112, 131 (2d Cir. 2001); O'Brien Bros. v. The Helen B. Moran, 160 F.2d 502, 506. (2d Cir. 1947).

Since interest is meant to be compensatory, and Mediterranean will be compensated through demurrage for the lost use of its shipping container during the time when the container was detained, the Court concludes that interest should commence on May 6, 2010, the day when Mediterranean disposed of the cargo and recovered its container, and run until the entry of judgment. The interest rate will be based on the average 4-Week Treasury Bill rate for that time period. See New York Marine, 266 F.3d at 131("Interest is

the Bill of Lading that Mediterranean produced to the Court, and no other proof of these charges has been submitted. Therefore, the Court cannot find sufficient proof of these fees, and declines to award them.

**B. Interest**

Plaintiff also asks for an award of interest on its damages. "Although it is an abuse of discretion to deny prejudgment interest in admiralty cases except under extraordinary circumstances, the district court has broader discretion to determine when interest commences and what rate of interest to apply." Independent Bulk Transport, Inc. v. Vessel Morania Abaco, 676 F.2d 23, 25 (2d Cir. 1982)(internal citation omitted). In admiralty, interest is meant to be solely compensatory. See New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.), 266 F.3d 112, 131 (2d Cir. 2001); O'Brien Bros. v. The Helen B. Moran, 160 F.2d 502, 506. (2d Cir. 1947).

Since interest is meant to be compensatory, and Mediterranean will be compensated through demurrage for the lost use of its shipping container during the time when the container was detained, the Court concludes that interest should commence on May 6, 2010, the day when Mediterranean disposed of the cargo and recovered its container, and run until the entry of judgment. The interest rate will be based on the average 4-Week Treasury Bill rate for that time period. See New York Marine, 266 F.3d at 131("Interest is

intended to make the injured party whole . . . and generally should be measured by interest on short-term, risk-free obligations.")(internal quotation marks and citations omitted); Dessert Service, Inc. v. M/V MSC Jamie/Rafaela, 219 F. Supp. 2d 504, 509 (S.D.N.Y. 2002)("[t]he T-bill rate more closely parallels the income the damages would have earned in a short-term, risk-free investment.")(citing Transatlantic Marine Claims Agency Inc. v. M/V "OCCL INSPIRATION", 137 F.3d 94, 104 (2d Cir. 1998)).

### C. Attorneys' Fees and Costs

Plaintiff also requests attorneys' fees and costs related to pursuing this claim. The contract between the parties includes a provision for the award of attorneys' fees, (See Jorge Boose Decl., Ex. A ¶ 14.7), and there is no question that parties are entitled to seek fees and costs under such a provision. See Hardt v. Reliance Standard Life Ins. Co., --- U.S. ---, 130 S.Ct. 2149, 2156-57 (2010). Nevertheless, it is a well-established rule in this Circuit "that absent unusual circumstances attorneys are required to submit contemporaneous records with the fee applications." Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) (citing New York State Ass'n for Retarded Children v. Carey, Inc., 711 F.2d 1136 (2d Cir. 1983)); see also Tucker v. City of New York, 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010)("fee applications must be accompanied by contemporaneous time records . . . "). Plaintiff's

17

counsel has submitted no time records reflecting the work for which they seek fees, or evidence of their hourly rates or the costs expended. Accordingly, their request for the award of fees and costs is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted. The Clerk shall enter judgment against Defendant for demurrage damages in the amount of $30,191, plus interest, calculated at the average short-term T-bill rate for the period between May 6, 2010, and December 15, 2011.

SO ORDERED.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: December 15, 2011
       New York, New York